HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NHAN PHONG VU TRAN, and STEPHANIE T. AU,<br><br>                              Plaintiffs,<br><br>         v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>                              Defendants. | No.12-cv-5341 -RBL<br><br>ORDER<br><br>(Dkt. #9, 14) |

Plaintiffs have filed suit in response to the foreclosure and sale of their home, alleging breaches of contract, the Washington Deed of Trust Act, the Washington Consumer Protection Act, and other causes of action. Defendants Bank of America, N.A., BAC Home Loans Servicing, L.P., and Mortgage Electronic Systems Inc. ("MERS") have moved to dismiss. Further, Plaintiffs have requested leave to amend their Complaint.

## I.   BACKGROUND

In 2005, Plaintiffs borrowed $300,219 from America's Whole Sale Lender to purchase residential property in Clark County. (Am. Compl. ¶ 3.3.) Plaintiffs executed a promissory note and deed of trust in the process, listing First American Title as trustee and MERS as the nominee for the beneficiary. (*Id.* ¶ 3.3.) In July 2009, Plaintiffs defaulted, and Recontrust (the successor trustee) initiated non-judicial foreclosure. (*Id.* ¶ 3.5.) By that point, it appears that ownership of Plaintiffs' note had transferred, and Bank of America had become the servicer. Bank of America halted the foreclosure and agreed to a "Trial Period Plan" under the Home Affordable

Modification Program ("HAMP"), allowing Plaintiffs a reduced monthly payment while the bank determined whether Plaintiffs were eligible for a permanent loan modification. (*Id.* ¶¶ 3.07–3.13.) Bank of America suspended the trustee's sale scheduled for October 2009, although Plaintiffs acknowledge that the Bank was entitled to terminate the trial plan and "move forward with non-judicial foreclosure actions." (*Id.* ¶ 3.9–3.10.) Plaintiffs began making trial payments in November 2009.

Plaintiffs continued to make timely payments through 2009 and 2010. On July 30, 2010, MERS assigned its interest in the deed of trust to BAC Home Loans Servicing, L.P., which was later merged into Bank of America. (Def.'s Mot. to Dismiss at 3, Dkt. #9.)

In January 2011, Bank of America requested documents from Plaintiffs to determine if they were eligible for a permanent modification. (Am. Compl. ¶ 3.13.) Approximately a month later, the bank notified Plaintiffs that "the amount they were paying . . . was not sufficient," and "Plaintiffs did not meet the requirements for the HAMP permanent loan modification because the Plaintiffs failed to provide requested documentation." (*Id.* ¶ 3.14). Plaintiffs state that they "complied will all of [Bank of America's] document requests . . . ." (*Id.* ¶ 3.13.)

On July 21, 2011, Bank of America re-initiated the foreclosure process by sending Plaintiffs a notice of default. (Am. Compl. ¶ 3.19.) The bank then appointed Northwest Trustee Services, Inc., as trustee. Northwest Trustee scheduled a sale for November 28, 2011.

Plaintiffs continued to make timely payments throughout this period. (Am. Compl. ¶ 3.22.) Further, Plaintiffs allege that Bank of America informed them that the foreclosure would be postponed while their application for a permanent loan modification was being processed. (*Id.* ¶ 3.23.) That processing, however, appears to have continued through the actual sale of the property. Plaintiffs state that the bank requested additional documents eleven days before the scheduled sale—November 17, 2011. (*Id.* ¶ 3.23.) Plaintiffs provided that documentation on November 20th. (*Id.* ¶ 3.23.) According to the Complaint, Plaintiffs were not informed that the sale would be proceeding and were told of the sale when checking on the status of their loan modification. (*Id.* ¶ 3.24.)

Plaintiffs state that, despite the sale, Bank of America accepted Plaintiffs' December 2011 mortgage payment. (*Id.* ¶ 3.27.)

Bank of America has moved to dismiss the claims (Dkt. #9), and Plaintiffs seek to amend their Complaint (Dkt. #14). The proposed Amended Complaint appears largely identical to the first with claims added under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*, and the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*

In total, Plaintiffs assert the following claims:

- Wrongful Foreclosure by Bank of America and Northwest Trustee;
- Breach of Contract by Bank of America;
- Breach of the Duty of Good Faith by Northwest Trustee;
- Breach of HAMP Agreement;
- Negligence;
- Negligent Misrepresentation;
- Violation of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86;
- Equitable Estoppel;
- Unjust Enrichment;
- Tortious Interference with Contract or Expectancy;
- Quantum Meruit;
- Declaratory Judgment;
- Slander of Title;
- Violation of RESPA and TILA.

(*See generally* Am. Compl., Dkt. #20.)[1]

Bank of America argues that most of these claims are waived because Plaintiffs failed to bring suit before the sale of the property and that the remaining claims fail as a matter of law.

## II.   DISCUSSION

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content

---

[1] Plaintiffs have also included "Rescission" and "Injunction" as causes of action (Am. Compl. ¶ 7.1, ¶ 19.1.) Neither are causes of action. *Kwai Ling Chan v. Chase Home Loans, Inc.*, No. 12-cv-273, 2012 WL 1252649 at *3–4 (W.D. Wash. Apr. 13, 2012) (dismissing claims for "rescission" and "injunction" and collecting supporting case law). The "claims" for rescission and injunction are therefore dismissed.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the Court must accept as true a complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly* ).

### A. Amendment of the Complaint

Because the proposed Amended Complaint adds only two causes of action—to which Defendants have responded in substance—the Court sees no prejudice in considering the Amended Complaint on the merits here. Plaintiffs' motion to amend is granted.

### B. Waiver

Bank of America argues that Plaintiffs failed to enjoin the foreclosure sale and therefore waived most of their claims. Wash. Rev. Code § 61.24.130 lays out the procedure by which a borrower may enjoin a foreclosure sale, and it is the "only means a grantor may preclude a sale once foreclosure has begun . . . ." *Brown v. Household Realty Corp.*, 146 Wash. App. 157, 163 (2008) (quoting *Cox v. Helenius*, 103 Wash. 2d 383, 388 (1985)). A party waives post-sale challenges where that party: "(1) received notice of the right to enjoin the sale; (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale; and (3) failed to bring an action . . . ." *Albice v. Premier Mortgage Servs. of Wash., Inc.*, 174 Wash. 2d 560, 570 (2012). Waiver is "an equitable principle" that applies "where it serves the goals" of the Washington Deed of Trust Act—efficiency, ensuring an adequate opportunity to prevent wrongful foreclosure, and promoting the stability of land titles. *Id.* at 567, 569.

The Court must conclude that waiver is not equitable in this case.  Plaintiff alleges that the bank requested additional loan documents from Plaintiffs only a week before the scheduled foreclosure and assured Plaintiffs that the property would not be sold while the application was reviewed.  (Am. Compl. ¶ 3.23.)  A reasonable borrower would assume that Bank of America was in contact with Northwest Trustee and ensuring that the property would not be sold.  Thus, Plaintiffs did not fail to bring an action to enjoin the sale; rather, Bank of America allegedly led them to believe that the sale would be postponed.  Bank of America's response—that Plaintiffs received all proper notices—ignores the representations alleged by Plaintiffs and is insufficient to support waiver.

The fact that Plaintiffs did not waive their claims does not, however, provide substance to them.

**C.  Wrongful Foreclosure**

Plaintiffs argue that Bank of America breached the terms of the note and deed by:

- "Failing to properly assign and record the beneficiary's interest including assignment issues involving [MERS]";
- Failing to offer mediation;
- Failing to properly identify the beneficiary;
- Misleading Plaintiffs to believe that a forbearance agreement stayed the trustee's sale;
- "Inducing" Plaintiffs to make a "futile" attempt to modify their loan;
- Failing to account for payments tendered by Plaintiffs;
- Failing to send proper notices required by the Deed of Trust Act;
- Improperly initiating foreclosure through Recontrust;
- Failing to re-initiate the foreclosure process after originally discontinuing;
- Charging improper fees and costs.

(*See* Am. Comp. at 8–9, Dkt. #20.)   The Complaint, however, lacks facts to support any of these claims—indeed, some of Plaintiffs' claims are contradicted by their own allegations.  First, Plaintiffs' claims regarding MERS are meritless.  They present no facts whatsoever regarding the company or the assignment.  Second, Plaintiffs cite no law requiring Bank of America to offer mediation.  Third, Plaintiffs fail to explain why the beneficiary of the deed was not "properly identified," especially given that Plaintiffs made payments to Bank of America and negotiated a trial modification with the bank.  Fourth, Plaintiffs have not alleged a forbearance agreement or

any facts suggesting how Bank of America misled them with regard to such an agreement. Fifth, Plaintiffs do not specify what notices they failed to receive. Sixth, the Complaint contains no explanation for why foreclosure was improperly initiated by Recontrust. Seventh, although Plaintiffs allege that Bank of America failed to re-initiate the foreclosure process, they simultaneously allege that the bank renewed the foreclosure process by sending a new notice of default on July 21, 2011. (Am. Compl. ¶ 3.18.) Lastly, Plaintiffs do not address what fees and charges the bank improperly charged.

There appear to be only two substantial allegations of misconduct: (1) that the bank misled Plaintiffs to believe that the foreclosure sale was postponed; and (2) that the bank accepted and kept the December 2011 payment *after* selling the property. But those facts alone, if true, do not support a claim that Bank of America wrongfully foreclosed. Indeed, Plaintiffs admit default, acknowledge that Defendants were entitled to deny a loan modification and proceed with foreclosure, and fail to suggest facts supporting a cause of action for wrongful foreclosure.

### D.  Breach of Contract by Bank of America

Plaintiffs allege that Bank of America breached the terms of the deed and the "HAMP trial plan," which they allege constituted a contract. The Complaint, however, identifies no terms that were breached; rather, Plaintiffs argue that the "written assurances" of their agents were breached. These allegations are so vague that neither the Court nor Defendants can be expected to reply, and they are thus dismissed.

Plaintiffs further state that Bank of America "breached its express contracts with the Plaintiff [sic] by illegally commencing foreclosure with its captive agent, Recontrust." (Am. Compl. ¶ 8.3.) Again, the Complaint contains no explanation of how the contract was breached.

Plaintiffs also suggest that "[t]he loan servicer's acceptance of payments from the Plaintiff without crediting them against the default or loan balance breached the implied covenant of good faith and fair dealing." (Am. Comp. ¶ 8.7.) The Complaint contains, however, no facts relating to a failure to credit payments. The sole fact this *could* relate to is Bank of

America's alleged acceptance of a December 2011 payment, although it is not suggested that this was not credited.  The facts here are too vague and insufficient to state a claim.

### E.  Breach of the Duty of Good Faith and Fair Dealing

Plaintiffs argue that Northwest Trustee violated its statutory duty of good faith and fair dealing under Wash. Rev. Code § 61.24.010(4).[2]  Northwest Trustee did this, apparently, by "failing to act impartially."  (Am. Compl. ¶ 11.4.)  The allegation is woefully inadequate to sustain a claim and is dismissed.

### F.  Breach of Alleged HAMP Agreement

Plaintiffs allege that they "constitute third party beneficiaries of the federal government's Home Affordable Modification Program (HAMP)."  (Am. Compl. ¶ 9.2.)  According to the Complaint, Bank of America "violated the contractual agreement with the federal government through HAMP" by failing "to stop the foreclosure process as it agreed to when it agreed to accepted [sic] the HAMP agreement with the federal government."  (*Id.* ¶ 9.5.)

HAMP provides lenders federal funds to offer loan modifications to prevent a foreclosure sale. *See Yongbae Kim v. Bank of Am., N.A.*, No. 11–cv–296, 2011 WL 3563325 (W.D. Wash. Aug. 11, 2011); 12 U.S.C. § 5219.  There is no private right of action by a homeowner to enforce the provisions of HAMP.  *Id.*; *see also Mirzoyan v. Wells Fargo Bank, N.A.*, No. 11–cv–023, 2012 WL 1259079 (W.D. Wash. Apr. 13, 2012); *Lucia v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 1059, 1066 (N.D. Cal. 2011).  "Neither the Emergency Economic Stabilization Act, which created HAMP, nor HAMP's guidelines create 'a property interest in loan modifications for mortgages in default.'"  *Lucia*, 798 F. Supp. 2d at 1066 (citing *Williams v. Geithner*, 2009 WL 3757380, at *6 (D. Minn. Nov. 9, 2009); *see also Hoffman v. Bank of America, N.A.*, 2010 WL 2635773, at *3 (N.D. Cal. June 30, 2010) (holding that because lenders are not required to make loan modifications for borrowers that qualify under HAMP and the servicer's agreement does not confer an enforceable right on the borrower, there is no private right to enforce HAMP)).  In short, there is no private right of action created under HAMP, and the claim is dismissed.

---

[2] The Amended Complaint incorrectly cites subsection (3).

**G.  Negligence and Negligent Misrepresentation**

Plaintiffs allege that Northwest Trustee was negligent in selling the property despite the representations from Bank of America to Plaintiffs.  (*Id.* ¶ 14.2.)  Further, Plaintiffs allege that Bank of America negligently misrepresented that the foreclosure sale would be postponed while the bank reviewed their loan modification application, thereby depriving Plaintiffs of the opportunity to cure their default.  (Am. Compl. ¶ 10.2.)

As an initial matter, Plaintiffs fail to suggest how Northwest Trustee is responsible for the alleged representations made by Bank of America to Plaintiffs.  There is simply no link, and the negligence claim against Northwest Trustee is dismissed.

Defendants do not address the negligent misrepresentation claim directly, relying instead on their already-rejected waiver argument.  It is not clear that Plaintiffs' negligent misrepresentation claim fails as a matter of law, and the Court therefore denies the motion to dismiss the negligent misrepresentation claim against Bank of America.

**H.  Violation of the Washington Consumer Protection Act**

Plaintiffs assert that Bank of America's alleged negligent misrepresentation constitutes an unfair and deceptive act within the meaning of Wash. Rev. Code § 19.86.  In response, Bank of America argues that Plaintiffs "offer no specifics as to when, how or by whom the representation was made."  (Def.'s Mot. to Dismiss at 13, Dkt. #9.)  Plaintiffs state, however, that Bank of America's loan-modification representatives made these statements in numerous interactions between July and November 2011.  And Plaintiffs cite a letter sent by Bank of America requesting further loan modification documents just eleven days before the sale.  (Am. Compl. ¶ 3.23, Dkt. #20.)  While it is not entirely clear what damages Plaintiffs have suffered by the unfair statement—indeed, they have not alleged that they would have cured the default and prevented the sale—dismissal is premature.

**I.  Equitable Estoppel**

Plaintiffs argue, in essence, that Bank of America should be estopped from foreclosing because it "made promises and statements that the foreclosure would be postponed and that the Plaintiffs were going to receive a permanent loan modification."  (Am. Compl. ¶ 18.2.)  The

doctrine of equitable estoppel precludes a party who "causes another to change his position . . . to such person's detriment" from "asserting the conduct . . . of the other party to his own advantage." *Dickson v. U.S. Fidelity & Guaranty Co.*, 77 Wash. 2d 785, 788 (1970) (citing *Kessinger v. Anderson*, 31 Wash. 2d 157 (1948)). Because equitable estoppel is "not a favored doctrine," the party asserting estoppel "must prove its elements by clear, cogent, and convincing evidence." *Dombrosky v. Farmers Ins. Co. of Wash.*, 84 Wash. App. 245, 256 (1996).

It is unclear that Plaintiffs understand the proper use of the equitable estoppel doctrine. The Court cannot "estop" a foreclosure sale (particularly one that has already happened). The claim is dismissed.

### J. Unjust Enrichment

Plaintiffs argue that Defendants have been unjustly enriched by the wrongful foreclosure. (Am. Compl. ¶ 17.2.) In Washington, "unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young v. Young*, 164 Wash. 2d 477, 484 (2008). But, "[a] party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract." *Chandler v. Wash. Toll Bridge Auth.*, 17 Wash. 2d 591, 604 (1943). Here, Plaintiffs allege multiple contracts and may not therefore disregard the terms of those contracts and seek damages on an implied contract relating to the same matter—the foreclosure. The claim is dismissed.

### K. Tortious Interference

Plaintiffs argue that Bank of America and Northwest Trustee knew there was a second mortgage on the property, and they acted "exclusively for their own benefit by foreclosing." (Am. Compl. ¶ 13.3.) The foreclosure "interfered with the relationship and expectancy that [Plaintiffs] had with junior lienholder [sic]." (*Id.*) Plaintiffs are unclear as to what "expectancy" they held under their second mortgage. In any event, the Complaint demonstrates that Defendant properly initiated foreclosure proceedings. The two substantive allegations of misconduct listed above cannot support a claim for tortious interference, and the claim is dismissed.

### L. Quantum Meruit

Plaintiffs suggest that they are "due the reasonable value of their performance under the Trial Modification Plan proffered by the loan servicer's agent, in an amount to be determined at trial." (Am. Compl. ¶ 16.2.) "Quantum meruit . . . is the method of recovering the reasonable value of services provided under a contract implied in fact." *Young v. Young*, 164 Wash. 2d 477, 485 (2008). Here, there is no contract "implied in fact"; there is an express contract. Further, Plaintiffs applied for a loan modification; they did not "provide service." The claim is frivolous and dismissed.

### M. Declaratory Judgment

Plaintiffs seek a declaratory judgment declaring the trustee's sale void and restoring their note and deed of trust—i.e., granting their requested relief. (Am. Compl. ¶ 20.2.) Under the Washington Uniform Declaratory Judgment Act, "[a] person interested in a deed . . . may have determined any question of construction or validity arising under the instrument." Wash. Rev. Code § 7.24.020. It is unclear what "question of construction or validity" Plaintiffs seek to address. Rather, Plaintiffs request only that the Court "declare" the relief sought, and as such, the claim is dismissed.

### N. Slander of Title

Plaintiffs allege that MERS slandered title to their property. The Complaint, however, contains no allegations that MERS took any action in regards to the property whatsoever. The claim is dismissed.

Plaintiffs also allege that Bank of America and Northwest Trustee slandered title to their property. To succeed on a slander of title claim, a plaintiff must show (1) false words; (2) maliciously published; (3) referencing a pending sale or purchase of property; (4) which go to defeat plaintiff's title; and (5) result in pecuniary loss to plaintiff. *Rorvig v. Douglas*, 123 Wn.2d 854, 859–60 (1994). Here, Plaintiffs fail to allege any of these elements, and the claim is dismissed.

### O. Violation of RESPA and TILA

In their Amended Complaint, Plaintiffs allege that "Lender"—apparently meaning Bank of America—"improperly calculated the amounts due by Plaintiff and wrongfully instructed the Trustee to foreclose . . . without adhering to MHA and RESPA relative to timely application of payments and failing to provide an accurate accounting when clearly requested by Plaintiff." (Am. Compl. ¶ 21.3.) The Complaint also states that "Lender . . . accepted payments and failed to tell Plaintiff that he was still in default or how those payments would be applied, if ever." (*Id.* ¶ 21.5.) The Complaint contains no facts, however, relating to the "timely application of payments" or a failure to "provide an accurate accounting." Plaintiffs do allege that Bank of America accepted a payment *after* the property was foreclosed, but this would not seem to sustain the allegations. Further, the HAMP documents supplied by Plaintiffs belie their own arguments. The documents state that "all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release." (Decl. of Nhan Tran at 3, Dkt. 13-1.) In other words, the amounts owed under the original note remain in effect despite the trial plan payments.

Plaintiffs further argue that "Servicer failed to apply payments in accordance with the terms of the Deed of Trust and other loan documents and in relation to TILA protections . . . ." (Am. Compl. ¶ 21.15.) The Complaint explains that portions of the trial payments were applied to principal and this "entitled Plaintiff to reasonable reliance [sic] in their belief that he [sic] was current on his mortgage obligations or at the very least sufficient interest payments were being made to and acceptable to Servicer." (*Id.* ¶ 21.16.) Plaintiffs request punitive damages in the amount of $5 million. The Court, however, is entirely unclear as to the connection. The HAMP trial plan documents clearly state that Plaintiffs were not released from the terms of their note and deed of trust; yet, Plaintiffs request $5 million based on their "entitlement" to believe that their loan was current.

Next, Plaintiffs argue that they were damaged under RESPA by negative credit reports. The Complaint fails to cite any law suggesting this is a valid cause of action.

Finally, the Complaint makes various, scattered references to "QWR," without any explanation. The Court declines to piece together the jigsaw puzzle.

To the extent that the Complaint contains other vague, scattershot allegations, the Court must conclude they cannot sustain a claim.  (*See, e.g.*, Am. Compl. ¶ 21.24 (alleging that "Lender's Board Members, Officers and Management all failed to provide necessary oversight . . .); ¶ 21.23 (asserting that "there was no statement provided by Lender indicating whether or not the consumer is entitled to a rebate of any finance charge" without any explanation as to who, what, where, when or why anyone would)).

### III.   CONCLUSION

Plaintiffs' motion to amend (Dkt. #14) is **GRANTED**.  Defendants' motion to dismiss (Dkt. #9) is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiffs' claims for negligent misrepresentation and violation of the Consumer Protection Act, Wash. Rev. Code § 19.86, survive, based on the allegations that Bank of America informed Plaintiffs that it would postpone the trustee's sale, but did not.  To the extent that Plaintiffs have alleged that Bank of America accepted a monthly mortgage payment after the property was sold, Plaintiffs may amend their Complaint to attempt to properly state a claim based on that allegation if they so choose.  Defendants may renew their motion to dismiss at that time.

Further, Plaintiffs are reminded that Fed. R. Civ. P. 11 requires counsel to conduct an "inquiry reasonable under the circumstances" and certify that the "claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending" existing law.  Plaintiffs' claims for quantum meruit and tortious interference, as well as a number of their vague factual allegations, come dangerously close to sanctionable conduct.

Dated this 1st day of November 2012.

Ronald B. Leighton
United States District Judge